IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Ronny Neal Campbell, Jr., | ) | Civil Action No. 6:12-2659-RBH-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on December 30, 2009, alleging that he became unable to work on October 1, 2008. The applications were denied initially and on reconsideration by the Social Security Administration. On September 30, 2010, the plaintiff

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Mark Leaptrot, an impartial vocational expert, appeared on April 28, 2011, considered the case *de novo*, and on June 30, 2011, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied his request for review on July 19, 2012. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

(2)     The claimant has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date (20 C.F.R §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)     The claimant has the following severe impairments: obstructive sleep apnea; hypertension; and disorders of the back (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

(5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit 6 hours each in an 8-hour day. However, the claimant can climb ladders ropes and scaffolds no more than occasionally. He is limited to simple, routine, repetitive tasks with only occasional interaction with the public. Additionally, he

2

has an increased need for supervision, as he must be read and be given directions.

(6)     The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(7)     The claimant was born on July 24, 1967, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(8)     The claimant has a limited education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2008, through the date of this decision (20 C.F.R. §§ 404.350(a)(5), 404.1520(g), and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can

perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

School records show that the plaintiff was administered the Wechsler Intelligence Scale for Children (WISC-R) on August 5, 1975, when he was 8 years old (Tr. 219). He had a Verbal IQ 0f 73, Performance IQ of 70, and a Full Scale IQ of 70 (Tr. 219). The plaintiff's school records demonstrate that he withdrew from at least one school for excessive absences and that he was frequently absent from his second high school (Tr. 196-212). School records also show that the plaintiff met the criteria for participation in an educable mentally handicapped program in 1977, and records for the 1979-80 school year show that the plaintiff was in a self-contained learning disabled class (Tr. 217-19). The plaintiff repeated the first grade once and was then "placed," rather than promoted, to the second grade. He was "retained" in the eighth grade (Tr. 215). The plaintiff quit school in the ninth grade (Tr. 61).

At a 2007 examination, Robert A. Ringel, M.D., described the plaintiff as "alert, oriented, and appropriate" with "normal concentration, attention and memory" (Tr. 228). The treatment notes of various doctors at Spartanburg Ear, Nose, and Throat ("ENT"), did not describe the plaintiff as having cognitive limitations, did not reference that he had any difficulty understanding, and did not list any diagnoses of borderline intellectual functioning or mental retardation (Tr. 229-34). Doctors described him as having normal orientation to time, place, person, and situation, and normal mood and affect (Tr. 231, 234).

Treatment notes from Wellness Preventative & Family Health, from both Gordon Early, M.D., and nurse practitioner Betty Abernathy, describe the plaintiff as being alert and oriented, with an appropriate affect (Tr. 242-49, 286-88).

---

[3]As the only issue raised by the plaintiff is whether or not the ALJ reasonably determined that his impairments did not meet the requirements of Listing 12.05(C), the evidence discussed here is limited to the evidence that is relevant to that issue.

The plaintiff reported to Dr. Early in May 2010 that he was primarily applying for disability benefits due to sleep apnea. He reported that he had worked as an alarm technician from the 1990s through 2007, making $40,000 to $50,000 a year (Tr. 262). Dr. Early only noted a history of dyslexia in the plaintiff's past medical history and did not mention mental retardation or borderline intellectual functioning (Tr. 263). After examination, Dr. Early assessed the plaintiff with "poor school performance" noting that he "evidently had dyslexia" and that "[t]here may be a component of developmental delay." Dr. Early thought it would be prudent to get a psychological examination. Dr. Early noted that he was not sure the plaintiff was competent to manage his own finances and that the plaintiff's wife now took care of the family's finances since the plaintiff had bounced some checks (Tr. 263-64). Dr. Early further noted, however, that the plaintiff was competent to read "rather complex wiring diagrams and install alarm units independently" (Tr. 264).

On March 7, 2011, the plaintiff underwent a "psychometric evaluation," performed by C. David Tollison, Ph.D., a clinical psychologist (Tr. 291-92). Dr. Tollison administered the Wide Range Achievement Test, third edition (WRAT-III) and the Wechsler Adult Intelligence Scale, third edition (WAIS-III). Based on the plaintiff's test results, Dr. Tollison explained that the plaintiff was functionally illiterate (he read at the early second grade level) and that he had a Verbal IQ of 66, a Performance IQ of 75, and a Full Scale IQ of 67, which fall in the upper end of the mild mental retardation range (Tr. 291). Dr. Tollison also stated that the plaintiff's intelligence fell within the range of 64 to 72 (Tr. 291-92), with 72 at the low end of borderline intellectual functioning and 64 classified as "extremely low."[4]

The plaintiff, who was 43 years old at the time of the administrative hearing, testified that he was married with two grown children (Tr. 58). He lived with his wife and daughter (Tr. 59). The plaintiff testified that he was in special education and that he cannot

---

[4]*See* http://www.assessmentpsychology.com/iqclassifications.htm (Last visited April 8, 2013).

read well (Tr. 63). He also testified that he had to take an oral driver's license test because he was unable to read the test on the computer (Tr. 82). The plaintiff last performed "alarm work" until he was laid off from that job (Tr. 61). The plaintiff testified that his brother-in-law, who worked with him doing alarm work, read the wiring diagrams and programmed the systems (Tr. 82-83). He also worked as a parts cleaner, but he lost the job when he could not complete the hazardous material test (Tr. 66). The plaintiff helped with the housework, dishes, laundry, and cooking, and he occasionally did the grocery shopping. He said his physical disabilities affected his abilities to vacuum, mop, sweep, and dust (Tr. 75-76).

The vocational expert testified that the plaintiff's work as an alarm installer/helper was medium, semi-skilled work; as a parts cleaner was heavy, semi-skilled work; and as a soft drink set-up person was medium, unskilled work (Tr. 97). The ALJ presented a hypothetical individual who was the same age as the plaintiff with the same education and work experience who could perform medium work; could occasionally climb ropes, ladders, or scaffolds; was limited to simple, routine, repetitive tasks with occasional interaction with the public; and who had an increased need for supervision as he must be read and given directions (Tr. 98). The vocational expert testified that such an individual could perform medium unskilled jobs such as truck washer, a poultry hanger, and box bender (Tr. 99).

## ANALYSIS

The plaintiff argues that the ALJ failed to properly consider whether the plaintiff meets the requirements of Listing 12.05(C) (pl. brief 4-6). The regulations state that when a claimant shows that his impairment(s) meet or equal a listed impairment of sufficient duration, "we will find you disabled without considering your age, education, and work experience." 20 C.F.R. §§ 404.1520(d), 416.920(d). To show that an impairment is "equivalent to a listed impairment, [a claimant] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493

U.S. 521, 531 (1990) (citation and internal quotation marks omitted) (emphasis in original).

> Listing 12.05 provides as follows, in pertinent part:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>        ***
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05.

As set forth above, to meet the diagnostic description or "capsule definition" of mental retardation, an individual must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]." *Id*. "If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria [paragraphs A through D], we will find that [the] impairment meets the listing." *Id*. § 12.00(A).

Here, the plaintiff argues that he meets the requirements of Listing 12.05(C). The plaintiff notes (pl. brief 4-5) that school records were submitted that show he had a Full Scale IQ of 70 when he was 8 years old (Tr. 219), and an evaluation in 2011 show that he had a Verbal IQ of 66, a Performance IQ of 75, and a Full Scale IQ of 67 (Tr. 291-92), which are consistent with the listing's requirements. School records also demonstrate that, at least for some years, the plaintiff was in a self-contained learning disabled class (Tr. 217-19). The plaintiff further argues that the ALJ recognized that he suffered from a variety of severe physical impairments, which imposed significant work-related limitations as required by

9

Listing 12.05(C) (pl. brief 5). Specifically, the ALJ found that the plaintiff's severe impairments included sleep apnea, hypertension, and a back disorder (Tr. 20). The plaintiff argues that "these impairments obviously cause some work related limitation, because the residual functional capacity assessment in the decision did include some limitations, including limiting lifting to a medium level, only occasional climbing of ladders, ropes, and scaffolds, and only occasional interaction with the public" (pl. brief 5 (citing Tr. 23)).

At step three of the sequential evaluation process, the ALJ stated:

[T]he undersigned notes that the claimant's combination of impairments, including his disorders of the back, sleep apnea, hypertension and non-severe anxiety, depression and dyslexia, has not resulted in the equivalent of Listings 1.04, 2.00, 3.10, 4.00, 9.00, or 12.00, as the undersigned can find no limitations in the claimant's ability to ambulate or perform fine and gross movements effectively to carry out his activities of daily living and work at the residual functional capacity below. Furthermore, the undersigned cannot find that the claimant's mild difficulty in social functioning, concentration, persistence and pace are too severe for unskilled work comprised of simple, routine, repetitive tasks that has only occasional exposure to the public. . . .

(Tr. 23). The ALJ specifically considered Listing 1.04 (Disorders of the Spine), Listing 3.10 (Sleep Related Breathing Disorders), and Listing 4.00 (Cardiovascular System) (Tr. 22-23), but she did not specifically analyze the plaintiff's impairments with regard to Listing 12.05(C).

The Commissioner argues that "[t]here is no evidence that Plaintiff was diagnosed with mental retardation, suffered from significantly subaverage general intellectual functioning or, aside from IQ scores, had deficits in adaptive functioning before age 22" (def. brief 10-11). " '[A]daptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include childhood developmental milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements." Program Operation

Manual Systems, DI 24515.056(D)(2), https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056. However, while the Commissioner may be correct in her analysis, the ALJ did not provide any discussion of Listing 12.05(C). Accordingly, the Commissioner's arguments are post-hoc rationalization. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). Without the ALJ's analysis, it is impossible to determine whether the finding that the plaintiff's impairments do not meet a listing is based upon substantial evidence. A listing analysis includes identifying the relevant listed impairments and comparing the criteria with the evidence of the plaintiff's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986) (stating that "[w]ithout such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, C.A. No. WMN–99–3696, 2000 WL 1916316, at *9 (D. Md. 2000) (finding that where there is "ample factual support in the record" for a particular listing, the ALJ should perform a listing analysis). Accordingly, upon remand, the ALJ should be instructed to specifically consider and analyze whether the plaintiff's impairments meet or equal Listing 12.05(C).

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

IT IS SO RECOMMENDED.

October 21, 2013                                          s/ Kevin F. McDonald
Greenville, South Carolina                      United States Magistrate Judge

11